812 F.2d 81
 55 USLW 2432, Prod.Liab.Rep.(CCH)P 11,262
 WISNIEWSKI, Susan and Klock, Debra Wisniewski
v.
JOHNS-MANVILLE CORP., Johns Manville Sales Corporation,
Raybestos Manhattan, Inc., Owens-Illinois, Inc.,
Celotex Corporation, Keene Corporation,
Unarco Industries, Inc.
v.
EAGLE-PICHER INDUSTRIES, INC., Owens-Corning Fiberglas Corporation.
Appeal of Susan WISNIEWSKI and Debora Wisniewski Klock, in
No. 86-1253.
Janet M. RICE, as parent and natural guardian of Valerie D.
Rice and Thomas W. Rice, Janet M. Rice, in her own
right and Paul A. Rice, Appellants, No. 86- 1254,
v.
JOHNS-MANVILLE CORP., Johns-Manville Sales Corporation,
Raybestos-Manhattan, Inc., Owens-Corning Fiberglas Corp.,
Owens-Illinois, Inc., Celotex Corporation, Eagle-Picher
Industries, Inc., Amatex Corporation, Unarco Industries,
Inc., Fibreboard Corporation, Southern Textile Corp., H.K.
Porter Co., Inc., Porter Hayden Co., Abex Corporation,
Maremont Corporation, Lear Siegler, Inc., Bendix
Corporation, J.P. Stevens, Inc., Uniroyal, Inc., Union
Carbide Corporation, Georgia-Pacific Corporation, General
Motors Corporation.
 Nos. 86-1253 and 86-1254.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 1, 1986.
Decided Jan. 30, 1987.
 
 Norman Perlberger, Mitchell S. Cohen, Thomas E. Kopil (argued), Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for appellants.
 McCarter & English, Philadelphia, Pa., for appellees Owens-Illinois, Inc. and Keene Corp.; James F. Hammill, of counsel; Nathan A. Schachtman (argued), on brief.
 Edward R. Paul, James R. Flandreau, Nilon, Paul & Mardinly, Media, Pa., for appellee Lear-Sieglar, Inc.
 George J. Lavin, Jr., Gerard Cedrone, George J. Lavin Associates, Philadelphia, Pa., for appellee General Motors Corp.
 William F. Kiniry, Mary A. Maher, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, Pa., for appellee Allied Corp., Successor-in-Interest by merger to the Bendix Corp.
 Before ALDISERT, Chief Judge, WEIS, Circuit Judge, and FISHER, Judge.*
 OPINION OF THE COURT
 ALDISERT, Chief Judge.
 
 
 1
 This court is not a stranger to this diversity case governed by Pennsylvania law involving claims by relations of certain decedents against asbestos manufacturers. When it was before us in Wisniewski v. Johns-Manville Corp., 759 F.2d 271 (3d Cir.1985) ("Wisniewski I ") we affirmed the district court's several determinations except in one limited area: a panel majority decided to remand to the district court to consider whether a claim could be made out under the theory of intentional infliction of emotional distress. One member of the panel would have affirmed outright. After remand, in a summary judgment proceeding the district court held that such a claim could not withstand legal scrutiny on the basis of the evidence before it. Again the plaintiffs have appealed in consolidated appeals. We affirm.
 
 I.
 
 2
 Appellants are the widow or children of Walter Wisniewski and Paul Rice, who allegedly died as a result of exposure to asbestos products manufactured by appellees. They filed suit in the district court in 1981 alleging, inter alia, that the asbestos manufacturers had exposed the claimants to asbestos dust through their husband's or fathers' clothing or tools, and that they suffered severe emotional distress as a result of their fears of contracting asbestos-related diseases.
 
 
 3
 On November 25 and December 9, 1981, the district court dismissed the Wisniewski and Rice complaints pursuant to Rule 12(b)(6), F.R.Civ.P., for failure to state a claim. Both sets of plaintiffs appealed. This court affirmed the district court's dismissal of claims for negligent infliction of emotional distress but remanded for additional discovery their claims for intentional infliction of emotional distress. Wisniewski v. Johns-Manville Corp., 759 F.2d 271 (3d Cir.1985) ("Wisniewski I "). After remand, and upon consideration of a summary judgment proceeding, on March 28, 1986 the district court granted judgment for appellees in both actions. Wisniewski v. Johns-Manville Corp., Civ. No. 81-0489 (E.D.Pa. March 28, 1986), reprinted in app. at 7-13; Rice v. Bendix Corp., Civ. No. 81-0929 (E.D.Pa. March 28, 1986), reprinted in app. at 2002. These consolidated appeals by the claimants followed.
 
 II.
 
 4
 It is particularly important to emphasize our standard of review, because that standard provides the basis for reconciling the result here with that of Wisniewski I. The earlier appeal required us to review the dismissal of appellants' claims pursuant to Rule 12(b)(6), F.R.Civ.P.[1] We noted that the procedural posture of this appeal ... controls our decision. Under the federal notice pleading rules, the threshold for stating a cause of action to survive a Rule 12(b)(6) motion is very low. Unlike an appeal from a grant of summary judgment, we do not decide this case on the basis of supporting factual affidavits, depositions, or documents, but only on the naked averments of a complaint filed under the notice pleading tradition.
 
 
 5
 759 F.2d at 274; see also id. at 275.
 
 
 6
 By contrast here, on review of the district court's disposition of a motion for summary judgment, we are required to apply the same test that the district court should have used initially: summary judgment is properly granted only if, upon review of the evidentiary record, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R.Civ.P. In making this determination, all reasonable inferences must be drawn in favor of the non-movant. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).
 
 III.
 
 7
 Appellants first contend that the district court erred in considering the asbestos manufacturers' motions for summary judgment because the defendants "did not support their motion by the 'detailed facts' which would justify summary judgment." Br. for appellants at 15 (citing Wisniewski I, 759 F.2d at 276). Appellants apparently argue that summary judgment is always inappropriate if the defendant's motion is not supported by "affidavits or other materials denying the allegations of the plaintiffs' complaints." Id.
 
 
 8
 The Supreme Court rejected a virtually identical argument in Celotex Corp. v. Catrett, --- U.S. ----, ----, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (reversing court of appeals' holding that defendant's "summary judgment motion was rendered 'fatally defective' by the fact that [defendant] 'made no effort to adduce any evidence, in the form of affidavits or otherwise, to support its motion.' " ). The Court held that "the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at ----, 106 S.Ct. at 2552. See also Anderson v. Liberty Lobby, Inc., --- U.S. ----, ----, 106 S.Ct. 2505, 2509-12, 91 L.Ed.2d 202 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., --- U.S. ----, ----, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Although the Court acknowledged that a party seeking summary judgment must "inform[ ] the district court of the basis for its motion," it found "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Celotex at ----, 106 S.Ct. at 2553.[2]
 
 
 9
 The record here conclusively demonstrates that appellees properly supported their motions for summary judgment. In the Wisniewski case, appellees' motion was accompanied by over 200 pages of exhibits and affidavits. App. at 30-243. These materials included depositions and answers to interrogatories in which appellants admitted that they had not been directly exposed to appellees' products; that they did not suffer from any asbestos-related disease or physical injury; that their psychological problems were related to the death of their father; that their fears of future asbestos-related injury were the product of widely available public information; that they had no knowledge of their father's exposure to appellees' asbestos products; and that they had no reason to believe that appellees had acted intentionally, outrageously or with ill will toward them. Appellees' counsel also submitted affidavits concerning their review of appellants' trial exhibits and answers to interrogatories. The affidavits attested that appellants had not introduced sufficient evidence to support their claims for intentional infliction of emotional distress. In the Rice case, appellees submitted over 300 pages of exhibits and affidavits in support of their motion for summary judgment. App. at 2042-2368. These materials were reviewed in a nineteen page appendix that purportedly identified those portions of the record contradicting necessary factual elements of appellants' claims. App. at 2042-60.
 
 
 10
 On this record, it cannot reasonably be maintained that the asbestos manufacturers failed to inform the district court of the basis for their motion. See Celotex at ----, 106 S.Ct. at 2552. Contrary to appellants' contentions, the manufacturers supported their motion with more than mere "conclusory assertions." See br. for appellants at 14. Indeed, they appear to have exceeded the minimum requirements of Celotex and Rule 56 in supporting their motions for summary judgment. The district court, therefore, did not err in considering them.IV.
 
 
 11
 Once the manufacturers met their obligation to inform the district court of the basis for the motions, the claimants were required to establish the existence of genuine issues of material fact. Celotex at ---- - ----, 106 S.Ct. at 2552-55; Anderson at ---- - ----, 106 S.Ct. at 2509-12. On appeal they contend that they met this burden, and that summary judgment was therefore improper.
 
 
 12
 Their primary theory of recovery is set forth in paragraph 39 of the Wisniewski and Rice complaints. In preceding paragraphs appellants alleged that appellees' failure to provide adequate warning of the known dangers of asbestos products proximately caused their exposure to asbestos fibres and the illnesses and deaths of appellants' decedents. They then averred that:
 
 
 13
 39. As a direct and proximate result of the aforesaid, plaintiffs have developed severe anxiety, hysteria or phobias, any or all of which may develop or has developed into a reasonable and traumatic fear of an increased risk of additional asbestos-caused and/or related disease, including, but not limited to, cancer to plaintiffs, resulting from exposure, directly and indirectly, to the asbestos products of defendants.
 
 
 14
 App. at 55 (Wisniewski complaint), 2095 (Rice complaint).
 
 
 15
 In Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1274 (3d Cir.1979) (in banc), this court predicted that Pennsylvania courts would adopt section 46 of the Restatement (Second) of Torts and recognize the tort of intentional infliction of emotional distress. Subsequent decisions of Pennsylvania courts have proven the accuracy of this prediction. See, e.g., Stoddard v. Davidson, 355 Pa.Super. 262, 513 A.2d 419 (1986); Bartanus v. Lis, 332 Pa.Super. 48, 480 A.2d 1178 (1984); Banyas v. Lower Bucks Hospital, 293 Pa.Super. 122, 437 A.2d 1236 (1981). The cause of action has three elements: the conduct must be "extreme and outrageous", be "intentional or reckless", and cause severe emotional distress. Chuy, 595 F.2d at 1273; see also Bradshaw v. General Motors Corp., 805 F.2d 110, 114 (3d Cir.1986); Wisniewski I, 759 F.2d at 275-76. The district court determined that there were no genuine issues of fact concerning the elements of outrageousness and recklessness.
 
 A.
 
 16
 To satisfy the element of outrageousness, the conduct complained of must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " Jones v. Nissenbaum, Rudolph & Seidner, 244 Pa.Super. 377, 383, 368 A.2d 770, 773 (1976) (quoting Restatement (Second) of Torts Sec. 46 comment d); see also Wisniewski I, 759 F.2d at 276 (citing Jones ); Hooten v. Pennsylvania College of Optometry, 601 F.Supp. 1151, 1155 (E.D.Pa.1984) (the challenged conduct must "cross[ ] the threshold of decency into a realm of atrocity that could only be regarded as utterly intolerable in a civilized society.").
 
 
 17
 Appellants contend that each of the manufacturers acted "outrageously" by "exposing a large segment of the population to a known and serious health hazard." Br. for appellants at 20. To support this contention, they recite evidence allegedly demonstrating that each manufacturer exposed persons to asbestos products without adequate warnings at a time when the companies knew or should have known that asbestos was harmful. See br. for appellants at 20-21 (Bendix); 21-23 (General Motors); 23-24 (Lear-Sieglar); 25-27 (Keene Corp.); 27-31 (Owens-Illinois).
 
 
 18
 Even accepting appellants' factual allegations as true and granting them the benefit of all reasonable inferences, they have not demonstrated that the conduct here rises to the requisite level of outrageousness. Circumstances in which courts have found the challenged conduct to meet the high standard of outrageousness are easily distinguished. In Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118 (1970), the plaintiffs' fourteen-year old son had been struck and killed by a motor vehicle driven by the defendant. Without attempting to obtain medical assistance or to notify the police or the victim's parents, the defendant removed the body from the scene of the accident, stored the body in his garage, and subsequently buried it in a field. More than two months later, the partially decomposed body was found and the remains returned to the decedent's parents. In Banyas v. Lower Bucks Hospital, 293 Pa.Super. 122, 437 A.2d 1236 (1981), the court found that a cause of action had been made out when the defendant hospital's employees and physicians intentionally fabricated inaccurate records designed to suggest that the plaintiff caused the death of a third party. As a result of the defendants' wrongful conduct, the plaintiff was indicted on homicide charges.
 
 
 19
 Other cases have recognized a cause of action for less egregious conduct, but only in the context of a "special relationship." See, e.g., Pierce v. Penman, 357 Pa.Super. 225, 515 A.2d 948 (1986) (physician-patient); Hoffman v. Memorial Osteopathic Hospital, 342 Pa.Super. 375, 492 A.2d 1382 (1985) (physician-patient); Bartanus v. Lis, 332 Pa.Super. 48, 480 A.2d 1178 (1984) (aunt's and uncle's malicious interference with father-son relationship); Fair v. Negley, 257 Pa.Super. 50, 390 A.2d 240 (1978) (landlord-tenant); Beasley v. Freedman, 256 Pa.Super. 208, 389 A.2d 1087 (1978) (landlord-tenant). Accord: Chuy, 595 F.2d 1265 (employer-employee, physician-patient); Shaffer v. National Can Corp., 565 F.Supp. 909 (E.D.Pa.1983) (employer-employee). See also Restatement (Second) of Torts Sec. 46 comment e. Appellants concede that no special relationship is implicated in the instant case. Reply br. for appellants at 5.
 
 
 20
 More significantly, however, the Pennsylvania Supreme Court has recently determined that conduct similar to that alleged here will not support an award of punitive damages in a products liability action.[3] Martin v. Johns-Manville Corp., 508 Pa. 154, 175-176, 494 A.2d 1088, 1100 (1985) (Hutchinson, J. with one Justice concurring, and four other Justices concurring in result.) The Martin plaintiff alleged that defendant asbestos manufacturers had acted outrageously by failing to warn insulation installers of the health dangers of finished asbestos products at a time when the manufacturers "had access to certain literature which discusses generally the risks in question...." Id. at 176, 494 A.2d at 1100. The court noted that the plaintiff had not alleged that the defendants knew of the dangers their product posed to asbestos insulation installers in particular, and rejected plaintiff's contention that " 'in view of the medical state of the art' ", defendants' failure to warn constituted " 'such outrageous conduct to justify the imposition of exemplary damages.' " Id. at 177, 494 A.2d at 1100; see also id. at 174-177, 494 A.2d at 1099-1100 (distinguishing Hoffman v. Sterling Drug, Inc., 485 F.2d 132 (3d Cir.1973) and Neal v. Carey Canadian Mines, Inc., 548 F.Supp. 357 (E.D.Pa.1982), aff'd sub nom. Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481 (3d Cir.1985)). Similarly, appellants here have neither alleged nor introduced evidence to establish that appellees knew that their products posed a danger to those who were indirectly exposed to asbestos through contact with persons who had worked with finished asbestos products. Evidence that appellees acted outrageously vis-a-vis third parties (e.g., "a large segment of the population", br. for appellants at 20) is not sufficient to support a claim of intentional infliction of emotional harm to appellants.
 
 B.
 
 21
 Although appellants concede that they cannot prove that appellees intentionally harmed them, they contend that proof of appellees' recklessness permits recovery for intentional infliction of emotional harm. Br. for appellants at 31-32. This is an accurate statement of the law. See Pierce v. Penman, 357 Pa.Super. 225, 515 A.2d 948, 953 (Pa.Super.1986). Accord: Chuy, 595 F.2d at 1273 (the challenged conduct must be intentional or reckless); Restatement (Second) of Torts Sec. 46 ("One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional stress to another ...") (emphasis supplied).
 
 
 22
 Before us appellants maintain that the district court misapplied this standard and that it granted summary judgment because of appellants' failure to demonstrate appellees' intent to harm. In support of this contention, they cite to one portion of the district court's memorandum opinion: "[I]t is rather farfetched to suggest that defendants' conduct ... was calculated to cause emotional distress." Wisniewski v. Johns-Manville Corp., Civ. No. 81-0489, slip op. at 5 (E.D.Pa. March 28, 1986), reprinted in app. at 11. Appellants apparently anchor their argument on the phrase "calculated to cause," and draw the inference that the district court considered only intentional, and not reckless, conduct. We do not read the district court's opinion so narrowly. The court's statement is an accurate statement of the prevailing legal standard. See Papieves, 437 Pa. at 378, 263 A.2d at 121; accord: Wisniewski I, 759 F.2d at 275; Beidler v. W.R. Grace, Inc., 461 F.Supp. 1013, 1016 (E.D.Pa.), aff'd without op. 609 F.2d 500 (3d Cir.1979). Moreover, examining the challenged portion in context of the entire opinion, we are satisfied that the district court did understand that proof of reckless conduct is sufficient to support recovery and did apply the correct standard. See Wisniewski, slip op. at 3-4, 5, reprinted in app. at 9-10, 11. Cf. Smithers v. Bailar, 629 F.2d 892, 897 (3d Cir.1980) ("[A]n appellate court must carefully examine a trial court's statements to discern what the court meant in the opinion as a whole, rather than what was stated particularly in isolated sentences.").
 
 
 23
 More important, appellants have not referred to evidence demonstrating that their fears of contracting asbestos-related illnesses were the "natural and probable consequences" of appellees' failure to place warning labels on finished asbestos products. See Chuy, 595 F.2d at 1275. At trial, the claimants would have had the burden of proving appellees' " 'knowledge ... that severe emotional distress is substantially certain to be produced by [their] conduct.' " Hoffman v. Memorial Osteopathic Hospital, 342 Pa.Super. 375, 382, 492 A.2d 1382, 1386 (1985) (quoting Forster v. Manchester, 410 Pa. 192, 199, 189 A.2d 147, 151 (1963)) (emphasis deleted). Without evidence of the manufacturers' " 'deliberate disregard of a high degree of probability that the emotional distress will follow,' " Chuy, 595 F.2d at 1275, appellants have not met their burden--they have not raised a genuine fact issue as to recklessness.
 
 V.
 
 24
 Appellants also contend that the district court erred in failing to consider an additional basis for recovery--the emotional damages they sustained as a result of observing their husband's or fathers' illnesses and deaths from asbestos-related diseases. Although it takes a generous reading of the complaint to do so, we will conclude that the complaints contain averments that, liberally construed, raise such claims.[4]A.
 
 
 25
 The district court ruled that "[i]t is the law of this case that plaintiffs cannot recover damages for emotional distress associated with their father's illness and demise, or for the breakup of the family unit ('solatium')." Wisniewski, slip op. at 6, reprinted in app. at 12 (emphasis supplied). This was a proper analysis of our previous opinion in Wisniewski I, and as this passage indicates, appellants' contention that the district court considered only their claims for solatium damages is without merit.
 
 
 26
 Moreover, the district court correctly ruled that appellants' claims for emotional injuries stemming from their fathers' or husband's deaths were not properly before it because they were not before us in Wisniewski I. The court reasoned that because these contentions were not presented to this court at the time of the first appeal, they could not properly be considered by the district court in considering our limited remand to it. We agree. In the brief filed in this court in Wisniewski I, appellants stated that the sole issue on appeal was whether the district court erred "in dismissing the complaints ... for failure to state causes of action for intentional and negligent infliction of emotional distress, as manifested by plaintiffs' fear of future development of cancer and other diseases as a direct result of their household exposure to asbestos[.] " Wisniewski I, br. for appellants at 2 (emphasis supplied). Appellants further stated that they "raise[d] in these appeals only one of several claims presented in each suit. These claims on appeal stem from injuries which arise from plaintiffs' fear of future development of cancer and other diseases." Id. at 3 (emphasis supplied). See also id. at 10-11, 20 (appeals concerned claims set forth in p 39 of the complaints).
 
 
 27
 An issue that is not addressed in an appellant's brief is deemed waived on appeal. Delaware Valley Citizens' Council v. Commonwealth of Pennsylvania, 755 F.2d 38, 40 n. 2 (3d Cir.), cert. denied --- U.S. ----, 106 S.Ct. 67, 88 L.Ed.2d 54 (1985). Appellants' alternative theory of recovery was not before this court in the earlier appeal; a fortiori, it could not be remanded to the district court. See Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 949-50 (3d Cir.1985). Consequently, we cannot consider it here. Newark Morning Ledger Co. v. United States, 539 F.2d 929, 932 (3d Cir.1976). Cf. Todd & Co. v. Securities & Exchange Commission, 637 F.2d 154, 156-57 (3d Cir.1980); Universe Tankships, Inc. v. United States, 528 F.2d 73, 76 (3d Cir.1975).
 
 B.
 
 28
 Nevertheless we need not rest on a procedural analysis, because even if the district court erred in ruling that appellants' other claims were barred under the law of the case doctrine, we are permitted to, and would, affirm the grants of summary judgment on other grounds. See Johnson v. Orr, 776 F.2d 75, 83 n. 7 (3d Cir.1985); Myers v. American Dental Association, 695 F.2d 716, 725 n. 14 (3d Cir.1982), cert. denied, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983).
 
 
 29
 Appellants base their new contentions--admittedly not presented to us before--for emotional harm associated with their husband's or fathers' illnesses and death on section 46(2) of the Restatement (Second) of Torts:
 
 
 30
 (2) Where such [extreme and outrageous] conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
 
 
 31
 (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm,....
 
 
 32
 Recovery under this theory is typically limited to circumstances in which a plaintiff observes a sudden, traumatic injury to a family member, as where a "husband is murdered in the presence of his wife." Id. comment 1.
 
 
 33
 Appellants do not contend that they observed the manufacturers' allegedly extreme and outrageous conduct: their failure to place adequate warning labels on asbestos products. Nor do they claim emotional distress as a result of witnessing their decedents' exposure to asbestos products. See joint appendix filed in Wisniewski I at 96a-98a. Instead, appellants maintain that their observance of the ultimate effects of appellees' conduct--the illnesses and deaths of Messrs. Wisniewski and Rice--is adequate to support their claims for intentional infliction of emotional distress.[5]
 
 
 34
 Appellants cannot rely on Sinn v. Burd, 486 Pa. 146, 404 A.2d 672 (1979). In Sinn, the court adopted the analysis of the landmark California decision in Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), and permitted a mother who was standing outside the "zone of danger" to recover damages for the negligent infliction of emotional distress caused by observing her daughter's death in an automobile accident. The court held that "[w]here the bystander is a mother who witnessed the violent death of her small child and the emotional shock emanated directly from personal observation of the event, ... the mental distress and its effects [are] a foreseeable injury." Sinn at 173, 404 A.2d at 686.
 
 
 35
 But the Supreme Court of Pennsylvania has recently refused to extend Sinn v. Burd's holding to permit recovery for negligent infliction of emotional distress where the family member has no contemporaneous sensory perception of the cause of the injury. Mazzagatti v. Everingham, 512 Pa. 266, 516 A.2d 672 (1986). See also Brooks v. Decker, 512 Pa. 365, 516 A.2d 1380 (1986) (following Mazzagatti ). In Mazzagatti the court barred recovery to a mother who arrived on the scene within minutes after the automobile accident that fatally injured her child. Although Mazzagatti, like Sinn v. Burd, addresses claims for negligent infliction of emotional harm, we find it dispositive of appellants' additional claims for intentional infliction of emotional harm. The basis of the court's decision in Mazzagatti was the absence of duty or proximate causation:
 
 
 36
 [W]hen a plaintiff is a distance away from the scene of the accident and learns of the accident from others after its occurrence rather than from a contemporaneous observance, the sum total of policy considerations weigh against the conclusion that that particular plaintiff is legally entitled to protection from the harm suffered.... [T]he critical element for establishing such liability is the contemporaneous observance of the injury to the close relative....
 
 
 37
 Mazzagatti, 512 Pa. at 279, 516 A.2d at 679. Conceptually, the application of the Mazzagatti rule is equally appropriate to appellants' claims for intentional infliction of emotional distress because those claims are based on appellees' alleged recklessness. Cf. W. Prosser and W. Keeton, The Law of Torts, 36, 215 (5th ed. 1984). Indeed, a Pennsylvania appellate court recently applied Mazzagatti's contemporaneous observance requirement to deny recovery for the intentional infliction of emotional harm under similar circumstances. Stoddard v. Davidson, 355 Pa.Super. 262, 513 A.2d 419 (1986).
 
 
 38
 Assuming that the scene of the "accident" or "injury" to plaintiffs' decedents was their workplace, they could not recover under Mazzagatti unless they were present to witness the ingestion of asbestos fibres by their decedents. They have not demonstrated the existence of any material fact concerning presence at the scene of ingestion. In the alternative, if, as appellants appear to suggest, the situs of the injury was where appellants' decedents manifested their asbestos-related diseases, recovery is absolutely barred. In Mazzagatti, the court noted that "[t]he feelings of anguish and bereavement suffered by [the plaintiff] are not substantially different from those suffered by any parent who sees his or her dying injured child, whether it be at the scene of the accident or in the hospital room afterwards." Mazzagatti 512 Pa. at 280, 516 A.2d at 679. Consequently, a claim for such injury is "[i]n reality ... a claim for affectional loss or solatium to recompense a surviving relative for her feelings of anguish, bereavement and grief caused by the fact of injury and death of the decedent.... the common law has traditionally denied a damage award for solatium." Id. Thus, distilled to its essence appellants' additional theory becomes no more than a claim for loss of solatium. On this basis, the district court could have properly granted summary judgment for defendants.
 
 
 39
 Finally, appellants do not cite, nor has independent research disclosed, any case in which observation of gradual, non-traumatic injury to family members such as that alleged here constituted a ground for recovery for the infliction of emotional distress. On the contrary, this theory has been expressly rejected as a basis for recovery for infliction of emotional distress. See, e.g., Berardi v. Johns-Manville, 334 Pa.Super. 36, 44, 482 A.2d 1067, 1071 (1984); Cathcart v. Keene Industrial Insulation, 324 Pa.Super. 123, 150, 471 A.2d 493, 507 (1984). Accord Amader v. Johns-Manville Corp., 514 F.Supp. 1031, 1032-33 (E.D.Pa.1981). Thus, even if this court were to accept the logic of appellants' rationale, we would be required in this diversity action to reject its application in the absence of clear support from the Pennsylvania Supreme Court. "Although 'a federal court sitting in diversity may diverge from existing precedent when there is sufficient evidence that the highest state court would be willing to entertain a change in its common law', it 'should proceed with great caution when the effect of its ruling would be to broaden the law beyond the point where any other court has yet ventured.' " Oliver v. Raymark Industries, Inc., 799 F.2d 95, 98 (3d Cir.1986) (quoting W.A. Wright, Inc. v. KDI Sylvan Pools, Inc., 746 F.2d 215, 218 (3d Cir.1984)).
 
 VI.
 
 40
 Appellants contend that the district court improperly granted summary judgment without ruling on their motion to permit additional discovery. Because appellants complied with the requirements of Rule 56(f), F.R.Civ.P., this issue has been properly preserved for appeal. Mid-South Grizzlies v. National Football League, 720 F.2d 772, 780 n. 4 (3d Cir.1983), cert. denied, 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984).
 
 
 41
 The conduct of discovery is a matter for the discretion of the district court and its decisions will be disturbed only upon a showing of an abuse of this discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir.1983); Montecatini Edison S.p.A. v. E.I. du Pont de Nemours & Co., 434 F.2d 70, 72 (3d Cir.1970). Appellants must demonstrate that the district court's action "made it impossible to obtain crucial evidence...." In re Fine Paper Antitrust Litigation, 685 F.2d 810, 818 (3d Cir.1982), cert. denied, 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1003 (1983) (citations omitted).
 
 
 42
 On appeal, appellants have failed to persuade us that the district court's decision not to allow additional production of documents and answers to interrogatories deprived them of crucial evidence, or otherwise constituted a " 'gross abuse of discretion resulting in fundamental unfairness....' " Marroquin-Manriquez, 699 F.2d at 134 (citations omitted). Appellants have not explained how additional discovery would have cured the fundamental shortcomings of their claims: the absence of evidence of defendants' outrageous and reckless conduct or the lack of proof of appellants' observation of sudden, traumatic injury to their husband and fathers. Consequently, we find no abuse of discretion.
 
 VII.
 
 43
 For the reasons stated above, we will affirm the judgments of the district court in all respects.
 
 
 
 *
 Honorable Clarkson S. Fisher, Chief Judge of the United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 In reviewing orders dismissing an action pursuant to Rule 12(b),
 [t]he standard by which the orders must be tested is whether taking the allegations of the complaint as true, ... and viewing them liberally giving plaintiffs the benefit of all inferences which fairly may be drawn therefrom, ... "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief."
 Wisniewski I, 759 F.2d at 273 (quoting Bogosian v. Gulf Oil Corp., 561 F.2d 434, 444 (3d Cir.1977), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978)).
 
 
 [2]
 Writing in dissent, Justice Brennan agreed with the majority's articulation of the appropriate legal standard, and further explained the burden of the moving party:
 [A] conclusory assertion that the nonmoving party has no evidence is insufficient.... Rather, as the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record.... This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories and other exchanges between the parties that are in the record.
 Celotex at ----, 106 S.Ct. at 2557 (Brennan, J., dissenting).
 
 
 [3]
 The level of outrageousness required to support a claim for intentional infliction of emotional harm is comparable to, if not higher than, that required to support an award of punitive damages. Compare: Restatement (Second) of Torts Sec. 46 comment d with Sec. 908 comment b. See also Hoffman Memorial Osteopathic Hospital, 342 Pa.Super. 375, 384, 492 A.2d 1382, 1387 (1985) ("Since it was appropriate for the trial court to place before the jury the question of whether or not [defendant] committed the actionable wrong of intentional infliction of emotional distress under Section 46, the trial court should also have permitted the jury to consider the question of punitive damages.")
 
 
 [4]
 Paragraph 37 of the complaints avers that appellants' decedents contracted asbestos-related diseases and eventually died as a result of exposure to appellees' asbestos products. See app. at 55 (Wisniewski complaint), 2095 (Rice complaint). The complaints further alleged that:
 
 
 [38]
 As a direct and proximate result of the aforesaid, plaintiffs were caused to suffer substantial anxiety, emotional depression, physical and mental distress
 * * *
 
 
 [40]
 As a direct and proximate result of the aforesaid, plaintiffs ... have suffered and will continue to suffer permanent and on-going psychological damage which may require future psychological and/or medical treatments
 App. at 55-56 (Wisniewski complaint), 2095-96 (Rice complaint). The complaints also allege that appellees caused "disintegration and deterioration of the family unit" (p 41) and "permanently deprived [appellants] of the society, services and companionship" of appellants' decedents (p 42). App. at 56 (Wisniewski complaint), 2096 (Rice complaint).
 
 
 [5]
 Again, it takes a most generous reading of the claimants' briefs to recognize this theory. The clearest articulation appears in their reply brief:
 The [defendant] asbestos manufacturers marketed their products in such a way that they failed to warn users, including Paul Rice and Walter Wisniewski, of known hazards. The fact that the marketing decisions were made at locations geographically remote from the appellant families should not immunize the [defendants] from the consequences of their actions. It is not necessary, nor possible, for them to have witnessed every stage in the [defendants'] history which compounded to establish the pattern of outrageous conduct. Appellants witnessed the effects of that conduct. That is enough.
 Reply br. for appellants at 7.