

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-20-2008

# Pantjarini v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1497

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

## Recommended Citation

"Pantjarini v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1402.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1402

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 07-1497

————

DIAN PANTJARINI,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

————

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A95-377-288)
Honorable Donald Vincent Ferlise, Immigration Judge

————

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 14, 2008

Before: FUENTES, CHAGARES, and VAN ANTWERPEN, <u>Circuit Judges</u>.

(Filed: March 20, 2008)

————

OPINION OF THE COURT

————

1

VAN ANTWERPEN, *Circuit Judge*

Petitioner Dian Pantjarini, a native and citizen of Indonesia, seeks review of the January 17, 2007 Order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of Pantjarini's petition for withholding of removal and protection under the United Nations Convention Against Torture ("CAT"). We have jurisdiction to review Pantjarini's petition, and for the reasons set forth below, we will deny the petition.

I.

Because we write solely for the benefit of the parties, we will set forth only those facts necessary to our analysis.

Dian Pantjarini is a citizen of Indonesia. She is Javanese and a Muslim. Pantjarini and her husband, Bambang Suprijanto,[1] entered the United States in May 2000. Pantjarini was charged with removal on March 18, 2002 because she remained in the United States beyond the authorized date. She conceded removability on July 11, 2002. On July 27, 2005, Pantjarini appeared before the IJ and stated that she was applying for withholding of removal and protection under CAT.[2]

---

[1]Suprijanto declined to apply for relief and protection from removal. (A.R. 60). He also declined to apply for voluntary departure. (A.R. 85-86). The IJ determined that Suprijanto was not eligible for relief as a rider on Pantjarini's application, and this decision was not erroneous. Furthermore, because we will deny Pantjarini's petition, Suprijanto cannot claim relief from removal or protection under CAT.

[2]Pantjarini conceded at this hearing that she was ineligible for asylum, as she failed to file a claim within one year of entry into the United States. She had filed a claim for

Pantjarini based her claims for relief on her fear of returning to Indonesia. She claimed that riots, demonstrations, religious conflicts, and an economic crisis caused her to fear persecution or torture were she to return to Indonesia. She pointed to the State Department Country Report as evidence of conflict in Indonesia. Before the IJ, Pantjarini testified that she had given a speech at a student-led rally in 1998. Pantjarini was only a participant in the rally, however; she was not one of the organizers. (A.R. 73). The demonstrators at the rally, including Pantjarini, called for the Indonesian government to end the corruption and nepotism and "clean up their acts." (A.R. 67). During the rally, police clashed with students, and Pantjarini testified that during one such clash, she was struck and rendered unconscious. (A.R. 69-70). She further testified that she did not go to the hospital. Pantjarini also told the IJ that shortly after the demonstration, her friend was kidnapped, and that she feared she might be abducted, as well. (A.R. 71-73). Despite her concern, however, Pantjarini did not leave Indonesia for another two years.

On cross-examination, counsel for the Department of Homeland Security questioned Pantjarini about statements she made in her asylum application. On that form, Pantjarini described an incident during which four students from her school had been shot outside the school by a "spy." (A.R. 77-78, 166). Pantjarini was not at the scene of the shooting; she was in a laboratory when the shooting took place, and someone in the lab

asylum on February 4, 2002, almost two years after she entered the United States. Thus, the asylum application was correctly deemed untimely.

told her and the other students to get down on the floor. The record indicates that there was in fact a shooting matching the description given by Pantjarini. According to the record, however, the shooting took place in Jakarta and not in Surabaya, where Pantjarini went to school. (A.R. 80-81). Pantjarini testified about the shooting for the first time on cross-examination, and her response to the Government's inquiry as to why she did not testify to it as part of her direct examination was: "I don't know." (A.R. 78). Pantjarini also testified on cross-examination that neither her parents nor her siblings, all of whom are still in Indonesia, have had any trouble with the authorities.

The IJ found Pantjarini not credible based on her failure to testify about the shooting on direct examination and based on the evidence that the alleged shooting likely took place elsewhere. The IJ further found that, even if she had testified credibly, Pantjarini was not eligible for withholding of removal or CAT protection, as she neither demonstrated past persecution based on a protected characteristic nor a reasonable fear of persecution or torture were she to return to Indonesia. Pantjarini appealed to the BIA, arguing that the IJ erred in finding her testimony not credible and in holding that she was not eligible for withholding of removal or CAT relief. On January 17, 2007, the BIA upheld the IJ's finding that Pantjarini was not credible, having found no error in the IJ's decision. The BIA also affirmed the IJ's determination that Pantjarini was unlikely to be persecuted or tortured were she to return to Indonesia. Pantjarini filed a timely appeal of the BIA's decision with this Court.

4

II.

This Court has jurisdiction over Pantjarini's appeal from the BIA's final decision pursuant to 8 U.S.C. § 1252(a)(1). Pantjarini timely filed her petition. 8 U.S.C. § 1252(b)(1). Venue is proper under 8 U.S.C. § 1252(b)(2), as the removal proceedings were completed in Philadelphia, Pennsylvania.

In considering Pantjarini's petition, we review both the IJ's opinion and that of the BIA, as the BIA in this case both adopted the findings of the IJ and discussed some of the underlying bases for the IJ's decision. *See Chukwu v. Attorney General*, 484 F.3d 185, 189 (3d Cir. 2007); *Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004). We review the findings of the IJ and the BIA under the highly deferential "substantial evidence" standard; thus, we will uphold the findings of the IJ and the BIA "if they are supported by reasonable, substantial, and probative evidence on the record as a whole." *Chen v. Gonzales*, 434 F.3d 212, 216 (3d Cir. 2005); *see also Chukwu*, 484 F.3d at 189. We will only reverse the findings of the IJ and the BIA where the evidence in the record would compel a reasonable adjudicator to conclude to the contrary. *See* 8 U.S.C. § 1252(b)(4)(B).

III.

Pantjarini challenges the BIA and IJ's determination that she is not eligible for

withholding of removal or protection under CAT.[3]

## A. Eligibility for Withholding of Removal

To be eligible for withholding of removal, an alien must show that were she to be removed to the destination country, there is a "clear probability" that her "life or freedom" would be threatened based on one of the protected grounds set forth in the statute: race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1231(b)(3)(A); *Chen v. Gonzales*, 434 F.3d 212, 216 (3d Cir. 2005). An alien can meet this burden by demonstrating either past persecution, which raises a rebuttable presumption that the alien will be persecuted in the future, or a clear probability that the alien will suffer future persecution if returned to her country. *See* 8 C.F.R. § 208.16(b). In order to show a clear probability of future persecution, the alien must show both a subjective fear of persecution and that that fear is objectively

---

[3]Pantjarini does not appear to contest the IJ's adverse credibility finding. In fact, she states in her brief that the IJ found her testimony "credible, since it was consistent with known country conditions." *Pet. Br.* at 7; *see also id*. at 9 ("The IJ found no reason to doubt female Petitioner's credibility, and consequently reliance may be had upon the recital of events contained in Petitioner's testimony, her asylum application, and her sworn statement, supplemented by the United States Department of State Country Reports on Human Rights Practices: Indonesia 2000, 2001, and 2002."). Given the IJ's statement that he "believes that the respondent is *not credible*," Pantjarini clearly misstates the IJ's conclusion. (A.R. 43) (emphasis added). Because Pantjarini does not challenge the IJ's adverse credibility finding, we will not address that finding. Furthermore, for the purposes of this appeal, Pantjarini has waived any challenge to the adverse credibility finding because she did not raise this issue in her brief. *See Laborers' Int'l Union of N. America, AFL-CIO v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994); *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 88 (3d Cir. 1987).

6

reasonable. *See Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003). The objective element can be shown by evidence that the alien would be singled out for persecution or that there is a "pattern or practice" of persecuting individuals in the alien's country based on a protected ground. *See* 8 C.F.R. § 208.16(b)(2)(i).

### 1. Past Persecution

Substantial evidence supports the BIA's conclusion that Pantjarini is not eligible for withholding of removal because she did not suffer past persecution. Initially, Pantjarini has not demonstrated that her persecutors were motivated, even in part, by one of the statutorily-protected grounds. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992) (requiring at least some proof that the persecutor was motivated in part by the alien's protected status); *Lie v. Ashcroft*, 396 F.3d 530, 535 (3d Cir. 2005) (requiring a showing that the persecution suffered was "on account of" an enumerated ground). Pantjarini is Javanese and a Muslim, both of which are majorities in Indonesia, and the only evidence of ethnic or religious persecution that Pantjarini cites in her brief is evidence of the persecution suffered by ethnic Chinese persons in Indonesia. There is also no evidence in the record that suggests that Pantjarini was persecuted for her political opinion or that the soldiers at the rally stopped her from speaking. It was only as part of a general riot of violence that Pantjarini was injured, and she did not demonstrate that she was targeted for violence because of her role in the rally. Additionally, neither the kidnapping incident nor the school shooting was directed at Pantjarini. Thus, these acts

7

were not perpetrated "on account of" Pantjarini's beliefs or her membership in a particular social or political group. *See* 8 C.F.R. § 1208.13(b)(1).

Even if Pantjarini could show that her alleged persecutors were led to attack and harass her based on one of the grounds enumerated in the statute, she has not demonstrated that the harm she suffered was so severe as to rise to the level of persecution. *See Lie*, 396 F.3d at 536 (noting that the harm suffered by the petitioner was not so severe as to constitute persecution). Pantjarini cites only one incident of violence, during which she was beaten and knocked unconscious. She did not seek medical attention after she was struck, nor has she demonstrated that she suffered long-term, serious harm. *See Voci v. Gonzales*, 409 F.3d 607, 615 (3d Cir. 2005) (noting that Third Circuit precedent suggests that "isolated incidents that do not result in serious injury do not rise to the level of persecution"); *see also Jarbough v. Attorney General*, 483 F.3d 184, 191 (3d Cir. 2007) ("Abusive treatment and harassment, while always deplorable, may not rise to the level of persecution."); *Fatin v. INS*, 12 F.3d 1233, 1243 (3d Cir. 1993) (noting that persecution "is an extreme concept that does not include every sort of treatment our society regards as offensive"). Furthermore, the school shootings and the kidnapping of her friend are insufficient to show that Pantjarini herself was persecuted, as the violence was committed against someone else. *See Lie*, 396 F.3d at 537 (requiring "individualized" persecution). Thus, Pantjarini has not demonstrated that the harm she suffered rises to the level of "persecution."

8

Because the evidence presented by Pantjarini does not compel a finding that she was persecuted in the past based on a statutorily-protected ground, the BIA's conclusion was not error.

*2. Fear of Future Persecution*

With regard to the likelihood of future persecution, there is nothing in the record to compel a finding that Pantjarini is either subjectively or objectively fearful of being persecuted were she to return to Indonesia. In terms of the subjective requirement, Pantjarini's testimony was deemed not credible; thus, she has not demonstrated a subjective fear of persecution. *See Lie*, 396 F.3d at 536-37.

Additionally, Pantjarini has not demonstrated an objective fear of persecution. There is insufficient evidence in the record to compel a factfinder to conclude that she has an individualized fear of persecution, as she was not targeted for violence based on any of the protected grounds and she did not testify credibly. Furthermore, the fact that her parents and siblings are not suffering, combined with her inability to demonstrate an individualized fear of persecution, cuts against any claim of an objective fear of persecution. *See id*. at 537. With regard to whether there is a "pattern or practice" of persecuting Indonesians like Pantjarini, there is nothing in the record to compel a finding that Pantjarini met her burden of demonstrating that people of her race, religion, nationality, social associations, or political views are being persecuted. Most of the evidence cited by Pantjarini before the BIA and in this appeal deals with the persecution

9

of ethnic Chinese persons or incidents of general unrest.[4] This evidence is insufficient to warrant reversal of the BIA's determination.

There is nothing in the record that would compel a reasonable factfinder to conclude that Pantjarini is subjectively fearful of persecution or that she has an objective fear based on an individualized fear or a "pattern or practice" of persecuting persons like Pantjarini. Thus, the BIA and the IJ did not err in finding Pantjarini ineligible for withholding of removal, as substantial evidence supports that finding.

### B. Protection under CAT

In order to establish eligibility under CAT, the burden of proof falls upon the alien to demonstrate that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). The feared torture must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). The alien can carry her burden of demonstrating a likelihood of torture by her testimony alone, if it is deemed credible. 8 C.F.R. § 208.16(c)(2).

For the same reasons discussed in Part III.A, *supra*, the BIA and the IJ did not err in determining that Pantjarini is ineligible for protection under CAT. Pantjarini did not

---

[4]Pantjarini states in her brief that the IJ failed to consider the Country Reports. *Pet. Br.* at 12. The IJ's opinion specifically references the Country Reports, however, and notes that the statements in them are inapplicable to Pantjarini's petition. (A.R. 40, 46). Thus, there is no merit to Pantjarini's argument that the IJ failed to consider this evidence.

testify credibly, according to the BIA and the IJ, nor did she present sufficient evidence in the record to demonstrate a likelihood that she would be tortured were she returned to Indonesia. Substantial evidence supports the denial of CAT protection, and the BIA and IJ therefore did not err in finding Pantjarini ineligible.

IV.

We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary. For the foregoing reasons, Pantjarini's petition for review will be denied.