

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-23-2009

# Estate of Louis W. C v. Jose Aramburo

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-4220

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Estate of Louis W. C v. Jose Aramburo" (2009). *2009 Decisions.* Paper 1150.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1150

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4220
_____

ESTATE OF LOUIS W. CHANCE, JR.,
BY AMANDA HUMPHREYS AND LOUIS CHANCE, III,
PERSONAL REPRESENTATIVES,

Appellants

v.

FIRST CORRECTIONAL MEDICAL, INC.;
NIRANJANA SHAH, M.D.; JOSE A. ARAMBURO, JR., M.D.;
COMMISSIONER STANLEY TAYLOR;
JOYCE TALLEY, BUREAU CHIEF OF MANAGEMENT SERVICES
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 05-cv-00449)
District Judge:  Honorable Sue L. Robinson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 2, 2009

Before:  FISHER and CHAGARES, *Circuit Judges*, and DIAMOND,[*] *District Judge*.

(Filed:  June 23, 2009)

---

[*]Honorable Paul S. Diamond, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

_____

OPINION OF THE COURT

_____

DIAMOND, *District Judge*.

The Estate of Louis W. Chance, Jr. appeals from the District Court's: (1) denial of the Estate's motions to compel discovery; and (2) grant of summary judgment in favor of Appellees Stanley Taylor and Joyce Talley. We will affirm.

I.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

Because we write primarily for the Parties, we will summarize only those facts pertinent to our decision.

At the time of his death on September 23, 2003, Louis Chance was in the custody of the Delaware Department of Correction (DOC) at the Webb Correctional Facility. During his initial DOC medical screening, Chance denied both intravenous drug use and exposure to HIV. A subsequent blood test administered by the DOC revealed that Chance suffered from Hepatitis C. Chance's autopsy revealed that he suffered from an undiagnosed case of HIV/AIDS which made him susceptible to cryptococcal meningitis -- the fungal disease that caused Chance's death.

2

The events leading up to Chance's death began on September 8, 2003, when Chance complained of a severe headache. (App. at 68.) Over the ensuing days, although Chance occasionally refused medical treatment or was verbally abusive, he was repeatedly seen by medical staff, including physicians, psychiatrists, an optometrist, physician's assistants, counselors, and nurses. (App. at 69, 75-87.) During these repeated examinations, Chance's vital signs were normal. On several occasions, the DOC transferred Chance from Webb to the infirmary at the Harold R. Young Correctional Institution to receive medical treatment. On September 22, 2003, an examination revealed swelling of Chance's optic disc. (App. at 86.) Prison physicians ordered a brain scan on an "urgent" basis. Chance was found unresponsive in the early morning hours of September 23, 2003 -- the day the scan was to take place -- and transferred to St. Francis Hospital, where he died. (App. at 87.)

In their Amended Complaint, Chance's mother and son, as his Estate's Administrators, proceeded against: (1) First Correctional Medical, Inc. (the company with which the DOC had contracted to provide inmate medical care); (2) Chance's treating physicians; (3) former DOC Commissioner Stanley Taylor; and (4) Joyce Talley, former Chief of the DOC Bureau of Management Services. The Estate subsequently withdrew its claims against all defendants except Taylor and Talley, who, the Estate alleged, were "deliberate[ly] indifferen[t] to system-wide unconstitutional deficiencies

3

resulting from cost containment practices of the [DOC] and the fixed fee medical contractor" (*i.e.*, FCM). (Appellant's Br. at 4.)

In May 2005, FCM terminated its contract with the DOC, which, in turn, contracted with a new health care provider. (App. at 50.) In 2006, the United States Department of Justice, acting pursuant to the Civil Rights of Institutionalized Persons Act, investigated DOC conditions, and issued a Report concluding that the quality of medical care at several DOC institutions -- including HRYCI -- was constitutionally deficient. 42 U.S.C. § 1997 *et seq.* During discovery in the instant case, the Estate sought from Taylor and Talley, *inter alia*, the production of some 26,000 documents the DOC had provided to the DOJ.

Taylor and Talley provided the Estate with considerable discovery respecting both the medical care DOC and FCM made available to all prisoners and the care that was actually provided to Chance, including: "all of [Chance]'s medical records; documents from the 2003 Medical Review Committee meetings that relate to Webb and HRYCI; the grievance reports for Webb and HRYCI; budget documents for multiple years; the Request for Proposals and bid responses for the Health Services contract (May 2002); the bid rating and contract documents; accreditation documents from the National Commission on Correctional Healthcare; and a list of the medical vendor employees for Webb and HRYCI for 2003." (No. 05-449, Doc. No. 76, at 1-2.) Because Taylor and

4

Talley refused to produce the 26,000 documents provided to the DOJ in 2006, the Estate moved to compel.

On June 15, 2007, the District Court granted the motions to compel in part, ordering Taylor and Talley to produce all non-privileged documents relating to the "cost of, and allocation of resources for, medical care in Department of Correction facilities, as well as any document . . . that mentions the decedent," and all non-privileged documents "that relate to defendant Talley's duties in general, and her knowledge in particular of the quality of medical care provided at Webb and HRYCI during the year 2003." (Id. at 2.) The Court otherwise ruled that the Estate's requests were overbroad and not likely to lead to the production of relevant evidence.

On September 30, 2008, the District Court granted Taylor and Talley's motion for summary judgment, concluding that: (1) there was no evidence indicating that Taylor or Talley had anything to do with Chance's death; and (2) the Estate had not presented any evidence rebutting Taylor and Talley's declarations that there was no policy or practice to deny adequate medical care to inmates.

The Estate timely appealed the District Court's discovery and summary judgment Orders.

III.

We review the District Court's denial of a motion to compel discovery for abuse of discretion. Gallas v. Supreme Court of Pa., 211 F.3d 760, 778 (3d Cir. 2000).

Our review of the District Court's decision to grant summary judgment is plenary, and we apply the same standard as the District Court to determine whether summary judgment was appropriate. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001); see Fed. R. Civ. P. 56(c) (summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"). We must view the facts in the light most favorable to the non-moving party. Shields, 254 F.3d at 481. The non-moving party "must introduce more than a scintilla of evidence showing that there is a genuine issue for trial; [it] must introduce evidence from which a rational finder of fact could find in [its] favor." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005) (citation and internal quotations omitted).

IV.

The Estate challenges the District Court's refusal to compel the production of all 26,000 documents produced in 2006 to the DOJ. We conclude that there was no abuse of discretion.

The discovery provided below enabled the Estate to explore fully its allegation that unconstitutional cost containment policies and practices caused Chance's 2003 death. The additional materials the Estate sought included extensive documentation relating to the vendor that succeeded FCM in 2005 and other materials that had nothing to do with

6

this case. In these circumstances, the District Court correctly concluded that the Estate's demand for all 26,000 documents was overbroad. See Crawford-El v. Britton, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly."). The Estate has not demonstrated that this ruling "deprived [it] of crucial evidence, or otherwise constituted a gross abuse of discretion resulting in fundamental unfairness." Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987) (citing Marroquin-Manriquez v. INS, 699 F.2d 129, 134 (3d Cir. 1983)). Accordingly, we reject the Estate's contention that the Court abused its discretion.

V.

The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation and internal quotations omitted).

Liability for deliberate indifference does not attach to non-medical prison officials -- like Taylor and Talley -- "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). There is no evidence indicating that Taylor and Talley knew or had any reason to believe that prison medical staff were not treating or were mistreating Chance.

7

Deliberate indifference liability may also attach to non-medical prison administrators who fail in their supervisory capacity over medical staff. To establish supervisory liability, a plaintiff must demonstrate: (1) the existence of a policy or practice that created an unreasonable risk of an Eighth Amendment violation; (2) the supervisor's awareness of the creation of the risk; (3) the supervisor's indifference to the risk; and (4) that the plaintiff's injury resulted from this policy or practice. Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989); see also Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (*respondeat superior* liability not available under 42 U.S.C. § 1983). The Estate failed to make out any of these elements before the District Court. See Sample, 885 F.2d at 1118.

In these circumstances, the District Court properly granted Taylor and Talley's motion for summary judgment.

VI.

For the above reasons, we will affirm the judgment of the District Court.