**Lawrence DAVIS, a minor by and through his Mother, Lisette DAVIS, parent and natural guardian, Plaintiff,**

v.

**BOROUGH OF NORRISTOWN, Officer Adam Schurr, Officer William Mitchell, and Officer Matthew O'Connell, Defendants.**

**No. Civ.A.04–2116.**

United States District Court, E.D. Pennsylvania.

Nov. 21, 2005.

Vincent David Roggio, Norristown, PA, for Plaintiff.

Joseph J. Santarone, Jr., Megan L. Cinberg, Marshall Dennehey Warner Coleman & Goggin, King of Prussia, PA, for Defendants.

### MEMORANDUM

ROBERT F. KELLY, Senior District Judge.

The Complaint alleges that Norristown Police Officers Adam Schurr, William Mitchell, and Matthew O'Connell violated 14–year–old Lawrence Davis' (incorrectly named in the caption as "Lawrence David") civil rights while arresting him. Davis' Complaint includes an excessive force claim, a false arrest and false imprisonment claim, and a claim pursuant to *Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) alleging that he was deprived of the right to be free from arrest, detention, and prosecution without probable cause. Defendants have moved for summary judgment on the false arrest claim, the false imprisonment claim, and the *Monell* claim, but not the excessive force claim. Defendants also allege that Davis' claim for punitive damages should be dismissed. For the following reasons, I shall deny in part and grant in part Defendants' Motion.

## I. RELEVANT BACKGROUND

On May 15, 2002, Davis states that he went to LaRoma's Pizzeria ("LaRoma's") to buy a piece of pizza. LaRoma's is located on DeKalb Street in Norristown, Pennsylvania. Davis straddled a small bike while eating a slice of pizza in an alley next to LaRoma's. Davis claims that an older man he knew from the neighborhood asked him to hold a bag that contained two 40 ounce bottles of beer while the man picked up some paperwork inside a nearby building.

At approximately 7:55 p.m. Officer William Mitchell and Officer Adam Schurr were on patrol in uniform in an unmarked police vehicle. They were proceeding north in the 500 block of Dekalb Street passing LaRoma's. The officers claim that this section of Norristown "encounters a lot of drugs and violence" including shootings and drug deals that happen, approximately, every 15 or 20 minutes. (Defs' Mot. for Summ. J. at 4).

While Officer Schurr was riding as a passenger in the police vehicle he testified that he thought he saw Davis drinking from one of the 40 ounce bottles of beer. He also noticed that Davis was face-to-face with an older disheveled man. Officer Schurr believed that this was a possible drug transaction because he thought he saw the two individuals in the alley exchange something. Officer Schurr got out of the police vehicle and approached Davis who got off the bicycle, dropped the beer and ran through the alley exiting on Marshall Street. All the while Schurr pursued him instructing him to stop. In the meantime Officer Mitchell drove the police vehicle to the far end of the alley where Davis exited.

Mitchell was joined by Officer Matthew O'Connell and rejoined by Officer Schurr. Officer O'Connell admits to "tackling" Davis into cement steps and laying on him while attempting to place Davis in handcuffs. Davis claims that Officer Schurr punched him in the face when he was on his stomach lying across the cement steps with Officer O'Connell on top of him. Davis also claims that another police officer involved in the incident kicked him in the face when he turned his head away from Schurr's punch. Davis also contends that Officer Mitchell pulled his arm so

forcefully that he broke Davis' shoulder. After being taken to the police station, Davis was taken to the Montgomery Hospital for treatment.

On June 4, 2002, Davis was charged with resisting arrest, disorderly conduct, recklessly endangering another person, underage drinking, and possession of an open container of alcoholic beverage in public view. Davis had a trial before the Honorable S. Gerald Corso on November 4, 2002. Judge Corso found that the Commonwealth presented sufficient evidence beyond a reasonable doubt that Davis committed the delinquent act of possession of a brewed beverage in violation of Norristown Ordinance 95–2 [1] and adjudicated him delinquent.

Davis filed his original Complaint on or about May 17, 2004, but it was dismissed for failure to make proper service and for lack of prosecution. Davis' Complaint was reopened on or about January 27, 2005 and alleges that his arrest violates 42 U.S.C § 1983. Specifically, Davis' Complaint includes an excessive force claim, a false arrest and false imprisonment claim, and a claim pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) alleging that he was deprived of the right to be free from arrest, detention, and prosecution without probable cause. Defendants have moved for summary judgment on the false arrest and false imprisonment claim, as well as the *Monell* claim, but not the excessive force claim.

## II. *STANDARD OF REVIEW*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. A factual dispute is material only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989)(citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548 (1986)). Further, the non-moving party has the burden of producing evidence to establish prima facie each element of its claim. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. *Id.* at 322, 106 S.Ct. 2548; *Wisniewski v. Johns–*

---

**1.** Norristown Ordinance 95–2 is the "[o]pen containers in public" ordinance.

*Manville Corp.,* 812 F.2d 81, 83 (3d Cir. 1987).

## III. *DISCUSSION*

As noted, Davis brought this action under 42 U.S.C. § 1983. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

42 U.S.C. § 1982. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Davis has alleged violations of his rights under the United States Constitution, claiming that the police officers' assault of him was unprovoked and involved the use of excessive force, and that the subsequent arrest and detention occurred without probable cause. Davis further alleges that, under *Monell,* the Borough of Norristown supported the violation of his rights by improperly training its officers. The Defendants' actions, alleges Davis, not only entitle him to compensatory damages, but also punitive damages. I find that there is a triable issue of fact as to whether the police had probable cause to arrest Davis and as to whether the Officers Schurr, Mitchell, and O'Connell were acting pursuant to an official policy or custom. I also find that although Davis cannot bring a claim for punitive damages against Norristown Bor-

ough, he can bring a claim for punitive damages against the individual police officers. For these reasons, I deny Defendants' motion for summary judgment.

### A. False Arrest and False Imprisonment Claim

■ To maintain a § 1983 false arrest claim, Davis must show that the arresting officers lacked probable cause to make the arrest. *Dowling v. City of Philadelphia,* 855 F.2d 136, 141 (3d Cir.1988). When an officer makes an arrest without probable cause, a plaintiff may also assert a § 1983 false imprisonment claim based on any subsequent detention resulting from that arrest. *Groman v. Township of Manalapan,* 47 F.3d 628, 636 (3d Cir.1995). A § 1983 false imprisonment claim based on an arrest without probable cause is properly grounded in the Fourth Amendment guarantee against unreasonable seizures. *Id.*

■ Probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)); *Sharrar v. Felsing,* 128 F.3d 810, 817 (3d Cir.1997). The probable cause standard was created to " 'safeguard citizens from rash and unreasonable interferences with privacy' " and to allow "leeway for enforcing the law in the community's protection." *Gerstein,* 420 U.S. at 112, 95 S.Ct. 854 (quoting *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)).

■ In a § 1983 action the issue of whether there was probable cause to make an arrest is usually a question for the jury, but "where no genuine issues as to any material fact exists and where credibility

conflicts are absent, summary judgment may be appropriate." *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 192 (3d Cir.1984). "The question is for the jury only if there is sufficient evidence whereby a jury could reasonably find that the police officers did not have probable cause to arrest." *Sharrar*, 128 F.3d at 818.

 In determining whether probable cause exists, I must assess whether the objective facts available to the arresting officers at the time of the arrest were sufficient to justify a reasonable belief that an offense had been committed. *Id.* at 817. Courts apply a common sense approach based on the totality of the circumstances. *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir.2000). Evidence that may prove insufficient to establish guilt at trial may still be sufficient to find the arrest occurred within the bounds of the law. *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). Finally, probable cause need only exist as to any offense that could be charged under the circumstances. *Graham v. Connor*, 490 U.S. 386, 393, n. 6, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

 Here, there is sufficient evidence for a jury to reasonably find that the police officers did not have probable cause to arrest Davis for any offense under the circumstances.[2] Due to the disparate facts presented, whether Defendants had probable cause to arrest Davis for disorderly conduct or recklessly endangering another

person is a question for the jury. The relevant part of Pennsylvania's disorderly conduct statute states:

> Disorderly conduct (a) OFFENSE DEFINED.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor. (b) GRADING.—An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

18 Pa.C.S. § 5503. Defendants argue that Davis violated § 5503(a)(4) by dropping the bottles of beer he was holding and fleeing from Officer Schurr. The ensuing chase and capture of Davis, Defendants argue, created a hazardous condition that did not serve a legitimate purpose of Davis. The fact that Officer Schurr repeatedly told Davis to stop, Defendants argue, raises the offense to a misdemeanor. Defendants also argue that these actions constituted the reckless endangerment of the police officers in violation of 18 Pa.C.S. § 2705.[3]

---

2. Although Officer Schurr initially believed he observed a drug deal, he admits that he saw no items, nor currency involved in the drug deal, nor did he find drugs in the area where, according to his description, a drug deal transpires every 15 to 20 minutes. Defendants, therefore, do not argue that they possessed probable cause to arrest Davis for a drug offense. Nor do they argue that they are entitled to qualified immunity.

3. Pennsylvania's recklessly endangering another person statute, 18 Pa.C.S. § 2705, states:

> Recklessly endangering another person. A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

Once again, it is important to note that in a § 1983 action the issue of whether there was probable cause to make an arrest is usually a question for the jury, but "where no genuine issues as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate." *Deary*, 746 F.2d at 192. I find that summary judgment is not appropriate because there are genuine issues of material fact and credibility conflicts that a jury must decide. Davis' testimony differs greatly from that of the Defendants. His testimony, if believed by a jury, explains that he was doing nothing wrong, panicked when he saw the police charging him, ran away, and gave himself up to the police officers when he got tired. Davis testified that he had just bought a slice of pizza when an acquaintance asked him to hold two forty ounce bottles of Old English beer. He also testified that he did not drink any of the beer. These statements conflict with Officer Schurr's observation that he saw Davis drinking the beer and later found a smashed bottle of St. Ides' beer. Upon seeing Officer Schurr charge out of his unmarked police car, Davis testified that he dropped the beer and ran in fear. After running for several blocks, Davis testified that he tired and ac-quiesced to the pursuing officers. At that point, he was tackled by Officer O'Connell.

If a jury were to credit Davis' testimony, then there would be no probable cause to arrest him for either disorderly conduct or reckless endangerment of another. The fact that Davis ran from the police in a high crime area is evasive activity deserving reasonable suspicion from police officers, but does not indicate probable cause justifying a warrantless arrest. *Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). "Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning." *Id.* The Norristown Police Officers did not violate Davis' rights by pursuing and stopping him after he fled. However, the mere fact that Davis fled does not indicate that he was engaged in disorderly conduct or recklessly endangered the police officers pursuing him. Based on Davis' testimony, a jury could find as such.

 Furthermore, the underage drinking charge[4] and the violation of Norristown's open container ordinance[5] do not provide the basis for Davis' warrantless arrest. The issue here is not whether there was probable cause of whether Davis

---

**4.** Pennsylvania defines underage drinking as: A person commits a summary offense if he, being less than 21 years of age, attempts to purchase, purchases, consumes, possesses or knowingly and intentionally transports any liquor or malt or brewed beverages, as defined in section 6310.6 (relating to definitions). For the purposes of this section, it shall not be a defense that the liquor or malt or brewed beverage was consumed in a jurisdiction other than the jurisdiction where the citation for underage drinking was issued.

18 Pa.C.S. § 6308(a).

**5.** Norristown's open-container ordinance states:

No person shall have on or about his person, possess, carry or transport liquor, wine, beer or other alcoholic beverages in open containers in or upon any public sidewalk, street, parking lot, shopping center, public park, playground or any other public place in the Borough of Norristown. Further, no person shall drink or consume or otherwise ingest liquor, wine, beer or other alcoholic beverages in or upon any public sidewalk, street, parking lot, shopping center, public park, playground, thoroughfare or any other public place in the Borough of Norristown.

Norristown Ord. 95–2.

violated these laws, but whether violation of these laws constitutes an arrestable offense. Courts do not allow warrantless arrests for summary offenses such as underage drinking or the violation of an open container ordinance. *See Commonwealth v. Bullers,* 536 Pa. 84, 637 A.2d 1326, 1328–29 n. 2 (1994). The reasoning behind this rule is simple. Courts "may not permit a warrantless arrest for a summary offense when our legislation has not so provided." *Id.* at 1328. "Rather than giving officers authority to make a warrantless arrest for underage drinking, § 6308(d) merely instructs officers to notify the parents of a minor charged with that offense." *Id.* The facts of *Bullers* provide a relevant distinction between underage drinking and disorderly conduct:

> The Commonwealth confuses this distinction and argues that underage drinking falls within the statutory definition of disorderly conduct. This is simply not the law. If the defendant's behavior constitutes disorderly conduct, the officer can make an arrest on the grounds of a violation of 18 Pa.C.S. § 5503. The facts of the instant case involve a defendant merely walking down the street and subsequently being questioned about the theft of a vehicle. The officer only knew of Bullers's drinking by the odor of beer on his breath. Bullers was not engaging in any conduct which would cause the officer to believe that he was a danger to himself or others. Had that been the case, the officer would not have been left with the sole option of issuing a citation.

*Id.* at 1328–29 n. 2. I find that regardless of whether the Norristown police officers may have had probable cause to determine that Davis had violated Pennsylvania's underage drinking statute and Norristown's open-container ordinance, neither violation constituted an arrestable offense.

Therefore, I must deny summary judgment as to the substance of the § 1983 claims against the Defendants for false arrest and false imprisonment.

## B. Davis' *Monell* Claims

■ A municipality may be held vicariously liable for the unconstitutional actions of its agents when the agent's conduct was the result of a "municipal policy" or a "well-established custom." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipal policy is a "a statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690, 98 S.Ct. 2018. A custom is a "persistent and widespread" practice of government action that is "so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* at 691, 98 S.Ct. 2018. However, a municipality cannot be held liable for a § 1983 violation solely on the basis of the existence of an employee-employer's relationship with a tortfeasor. *Bd. Of the County Comm'rs v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Rather, the complaint of injury must be causally linked to a custom or policy of the municipality pursuant to which an employee was acting. *Beck v. City of Pittsburgh,* 89 F.3d 966, 972 (3d Cir.1996). Further, Norristown can only be liable for a constitutional deprivation if there is a direct causal link between a policy or custom and the alleged constitutional deprivation. *See City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Brown v. Muhlenberg Twp.,* 269 F.3d 205, 214–15 (3d Cir. 2001).

■ Here, Defendants argue that Davis has failed to allege any particular policy or practice which condones the violation of constitutional rights. (Defs' Mot. at 10). Davis responds by claiming two

*Monell* violations—the first is invalid, however, the second survives summary judgment. First, he argues that the Norristown Police Department has a custom or policy of violating constitutional rights because they fail to properly train their officers in "techniques of effectuating a physical arrest." (Pls.' Resp. at 5 (unmarked)). In effect, Davis alleges that the actions of Officers Schurr, Mitchell, and O'Connell were caused by the failure of the Borough of Norristown to properly and adequately control, train or supervise its officers. The inadequacy of police training as alleged by Davis may serve as a basis for § 1983 liability only "where the failure to train amounts to deliberate indifference to the rights of a person with whom the police come into contact." *City of Canton,* 489 U.S. at 389, 109 S.Ct. 1197. "Only where a municipality's failure to train its employees in relevant respects evidences a deliberate indifference to the rights of its inhabitants may such a shortcoming be properly thought of as a policy or custom that is actionable under § 1983." *Id.* "Deliberate indifference can be shown where the need for more or different training is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390, 109 S.Ct. 1197.

Davis' "failure to train" allegation fails to properly meet the elements of a valid *Monell* claim. *City of Canton* articulated the elements of a § 1983 violation based on deliberate indifference and failure to train in the negative. "[A] municipality's deliberately indifferent failure to train is *not* established by (1) presenting

evidence of the shortcomings of an individual; (2) proving that an otherwise sound training program occasionally was negligently administered; or (3) showing, without more, that better training would have enabled an officer to avoid the injury-causing conduct." *Simmons v. Philadelphia,* 947 F.2d 1042, 1060 (3d Cir.1991) (emphasis in the original). To supplement this definition, the United States Supreme Court held that "only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality ... can a city be liable for such a failure under § 1983." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

Davis' first *Monell* claim is exactly what *City of Canton* warns against. Davis presents evidence that Officer O'Connell was not trained on how to determine how much force to use when arresting someone who is resisting. Davis then alleges that better training would have enabled the officer to avoid the injury-causing conduct. Davis' first *Monell* claim fails because he never explains or shows how the failure to train reflects a "deliberate" or "conscious" choice by Norristown in light of Officer O'Connell's extensive testimony on the training he received with respect to the "Force Continuum." [6] (Defs' Resp. Ex. C at 9–14). Therefore, in as much as Davis' *Monell* claim is based on a lack of training, I grant Defendants' motion for summary judgment.

Davis' second *Monell* claim presents enough evidence of a policy or custom to survive Defendants' motion for summary judgment. Davis contends that Norristown has a policy or custom of arresting and detaining juveniles for underage

---

**6.** The "Force Continuum" is a series of police interactions delineated by the amount of "force" each interaction exudes. The "Force Continuum," according to Officer O'Connell's testimony, consists of: first, officer presence in full uniform; second, verbal commands, and third, muscling techniques. (Def.'s Resp. Ex. C at 9–11).

drinking. (Pls.' Resp. at 5 (unmarked)). Officer Schurr testified that Davis' arrest was mandated by policy guidelines. The relevant portion of his testimony is as follows:

(Cross Examination of OFFICER ADAM R. SCHURR by MR. ROGGIO)

Q: Now, you said that you were following some guidelines in trying to arrest my client?

A: Well, when we arrest for an underage drinking violation, the same with disorderly conduct, public drunk, for juveniles that are underage drinking, we take them into custody to transport them to the station to have a parent pick them up. I'm not going to issue—well, he ran. So if he didn't run, I still wouldn't have been able to issue him a citation right at the scene because he's underage. And if somebody was eighteen—or an open container when he's thirty-eight, he's drinking a beer, I can stop him, I can issue him a citation. If he's not causing a problem and he takes the citation, he leaves. If somebody is causing a problem—

Q: If I may, would you please contain yourself to the question I asked? I asked if you were following some guidelines—

A: Yes, sir.

Q: —in your actions in this case?

A: Yes.

Q: What guidelines might they be?

A: Dealing with juveniles who are arrested for underage drinking violations.

Q: Where did they come from?

A: I believe they come from not only the Norristown Police Department the [sic] from Pennsylvania Crimes Code.

Q: So—

A: I'd have to refresh my memory on which guidelines I'm talking about.

Q: So it's your testimony you have been instructed to handle these situations in that particular matter?

A: Yes, sir. That's the way it's always be [sic] done.

Q: Was that in seminars or—

MS. GIAMPORCARO: Objection. Relevance.

THE COURT: Well, are you basically testifying that that's the Norristown Police Department policy to detain juveniles for underage drinking? Is that basically what you have indicated?

OFFICER SCHURR: Yes, Sir.

(Pl.'s Resp. at 5 (unmarked) (Ex. E. N.T. Juv. Tr. at 36–37)).

A jury could find that Officer Schurr's testimony evidences a Norristown Police Department policy. A jury could also find that Officers Schurr, Mitchell, and O'Connell were following this policy when they arrested Davis and took him to the police station. As stated above, courts do not allow warrantless arrests for summary offenses such as underage drinking. *Bullers*, 637 A.2d at 1328–29 n. 2. "Rather than giving officers authority to make a warrantless arrest for underage drinking, § 6308(d) merely instructs officers to notify the parents of a minor charged with that offense." *Id.* at 1328. Officer Schurr's testimony supports Davis' second *Monell* claim that the Norristown Police Department policy of arresting juveniles for violating 18 Pa.C.S. § 6308 caused his Fourth Amendment right to be free from illegal seizures was violated by Defendant Officers Schurr, Mitchell, and O'Connell. Therefore, I must deny summary judg-

ment as to the substance of the Davis' second *Monell* claim against the Defendants.

### C. Davis' § 1983 Claims for Punitive Damages

 Davis seeks punitive damages against all Defendants. Punitive damages, however, may not be awarded against municipalities such as Norristown Borough. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). However, in a § 1983 claim against individual defendants, a jury may assess punitive damages if the defendant's conduct is shown to be motivated by an evil motive or intent, or when it involves reckless or callous indifference to constitutionally protected rights. *Brennan v. Norton,* 350 F.3d 399, 428–29 (3d Cir.2003) (quoting *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)). Regarding Davis' claims against Officers Schurr, Mitchell, and O'Connell, I find that there is sufficient evidence for a jury to find that their conduct was, at a minimum, reckless or callous with respect to the amount of force used to arrest Davis. Therefore, I will allow Davis' claim for punitive damages to stand against Officers Schurr, Mitchell, and O'Connell, but not against Defendant Norristown Borough.

An appropriate order follows.

### ORDER

**AND NOW,** this 21st day of November, 2005, having considered Defendants' Motion for Summary Judgment, Davis' Memorandum in Opposition, and Defendants' Response thereto, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 37) is:

1. **GRANTED** as to Defendant's Motion that Defendant Borough of Norristown shall not be subject to punitive damages; and

2. **DENIED** in all other respects.

It is further **ORDERED** that the above-caption shall be changed from "Lawrence David" to "Lawrence Davis."